UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BARRINGTON WALKER,

        Petitioner,

   v.                                                                                             23-CV-140-LJV
                                                                                                    DECISION & ORDER
JEFFREY SEARLS,

        Respondent.
_____

      Barrington Walker has been detained in the custody of the United States Department of Homeland Security ("DHS") since March 11, 2022—more than 25 months.  Docket Item 1 at ¶ 15.  On February 13, 2023, Walker filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York.  Docket Item 1.  On April 24, 2023, the respondent answered the petition, Docket Item 9; and on May 17, 2023, Walker replied, Docket Item 11.

      For the reasons that follow, this Court grants Walker's petition in part.

## FACTUAL AND PROCEDURAL BACKGROUND

      The following facts, taken from the record, come largely from filings with DHS.

      Walker is a native and citizen of Jamaica.  Docket Item 1 at ¶ 17; Docket Item 9 ¶ 3.  He entered the United States in 2001 and became a lawful permanent resident on June 15, 2012.  Docket Item 1 at ¶¶ 17-19; Docket Item 9 at ¶¶ 3-4.  On March 31, 2016, Walker was arrested in the State of Maine and charged with aggravated trafficking in scheduled drugs, unlawful trafficking of scheduled drugs, operating a

vehicle without a license, and criminal forfeiture.  Docket Item 9-3 at ¶ 6; Docket Item 9-7 at 1-6.  After he failed to appear for his arraignment in September 2016, a warrant was issued for his arrest.  Docket Item 9-3 at ¶ 7.  The warrant was executed in 2020, and in February 2021, Walker was convicted in Maine Superior Court, Kennebec County, of unlawful trafficking in scheduled drugs and criminal forfeiture.  *Id.* at ¶¶ 7-8.  He was sentenced to 32 months' imprisonment.  *Id.* at ¶ 8.

On March 11, 2022, DHS took Walker into custody and issued a "Notice to Appear," charging that Walker was subject to removal from the United States under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101-1537.  Docket Item 9-8; *see* Docket Item 9-3 at ¶ 9.  More specifically, DHS charged that Walker was subject to removal under section 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony, namely a conspiracy to illicitly traffic a controlled substance, *see* 8 U.S.C. § 1101(a)(43).  *See* Docket Item 9-8 at 4.

A few weeks later, Walker appeared before an Immigration Judge ("IJ") and requested and received a continuance so that he could retain legal counsel.  Docket Item 1 at ¶ 22; Docket Item 9-3 at ¶ 10.  Walker subsequently was given three more continuances to find an attorney.  Docket Item 1 at ¶¶ 22-24; Docket Item 9-3 at ¶ 10.  On July 26, 2022, Walker, through counsel, filed Form I-589, Application for Asylum, Withholding of Removal, and Protection Under the Convention Against Torture.  Docket Item 1 at ¶ 25; *see* Docket Item 9-3 at ¶ 10.

On September 19, 2022, the IJ denied Walker's application for asylum.  Docket Item 1 at ¶ 28; Docket Item 9-3 at ¶ 12.  Walker then appealed the IJ's decision to the Board of Immigration Appeals ("BIA") and requested and received a three-week

extension of the briefing schedule.  Docket Item 1 at ¶ 29; Docket Item 9-3 at ¶ 13.  On December 14, 2022, Walker submitted his brief to the BIA.  Docket Item 1 at ¶ 29.  The BIA dismissed Walker's appeal, and Walker then filed a petition for review of the BIA's order with the United States Court of Appeals for the Fourth Circuit.  *See* Docket Item 14.  That appeal remains pending.  *Id.*

## DISCUSSION

**I.     HABEAS PETITION**

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  The government maintains that Walker is validly detained under 8 U.S.C. § 1226(c) because he is a noncitizen with pending removal proceedings who has been convicted of conspiring to illicitly traffic a controlled substance.  Docket Item 9-1 at 4-9.  Walker disagrees on a single ground:  He contends that his detention for over six months "has become unreasonably prolonged" and therefore constitutes a violation of procedural due process under the Fifth Amendment of the United States Constitution.  Docket Item 11 at 2-11; *see* Docket Item 1 at ¶¶ 56-75.

The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of . . . liberty . . . without due process of law."  U.S. Const. amend. V.  The Supreme Court "has held that the Due Process Clause protects individuals against two types of government action."  *United States v. Salerno*, 481 U.S. 739, 746 (1987).  "So-called 'substantive due process' prevents the government from engaging in conduct that shocks the conscience, . . . or interferes with rights implicit in

3

the concept of ordered liberty." *Id*. (citations omitted).  "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *Id*.  "This requirement has traditionally been referred to as 'procedural' due process." *Id*.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and narrow nonpunitive circumstances, . . . where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id*. (emphasis in original) (citations and internal quotation marks omitted).  Other than those unique, special, and narrow circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty.  That promise stands as one of the Constitution's most vital protections against arbitrary government." *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019).

"[Noncitizens], even [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth . . . Amendment[]." *Plyler v. Doe*, 457 U.S. 202, 210 (1982); *see Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("It is true that [noncitizens] who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."). At the same time, Congress has "broad power over naturalization and immigration,

4

[permitting it to] make[] rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

Walker challenges the procedural safeguards that apply to his continued detention. Docket Item 1 at ¶¶ 56-75. The Due Process Clause is not offended by the mandatory detention of noncitizens for the "*brief period necessary* for their removal proceedings," *Demore*, 538 U.S. at 513 (emphasis added), but may be violated by detention beyond that "brief" period, depending on the balance of the individual's and the government's interests, *see, e.g.*, *id*. at 532 (Kennedy, *J.*, concurring) ("[A] lawful permanent resident . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention bec[omes] unreasonable or unjustified."); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances.").

For that reason, this Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry." *Hemans v. Searls*, 2019 WL 955353, at *5 (W.D.N.Y. Feb, 27, 2019). "A[t] the first step, the Court considers whether the [noncitizen's] detention has been unreasonably prolonged." *Id*. "If it has not, then there is no procedural due process violation." *Id*. "But if it has, the Court proceeds to step two and 'identifies the specific dictates of due process' by considering the *Mathews v. Eldridge* factors." *Id*. (alteration omitted) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). "If the government has not provided the procedural safeguards dictated by the *Mathews* factors to a [noncitizen] subject to unreasonably prolonged detention, then his continued detention violates procedural due process." *Id.*

5

### A.     Walker's Detention

"[W]hen weighing the lawfulness of continued detention of a [noncitizen] under the Due Process Clause," several factors determine whether detention is unreasonably prolonged.  *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858 (D. Minn. 2019).  This Court, for example, has considered "(1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the parties; and (4) the likelihood that the removal proceedings will result in a final order of removal."  *Hemans*, 2019 WL 955353, at *6.

First, and most important, courts consider the length of detention.  Walker has been in DHS custody since March 11, 2022—more than 25 months.  *See* Docket Item 1 at ¶ 20.  "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing."  *Muse v. Sessions*, 409 F. Supp. 3d 707, 716 (D. Minn. 2018) (collecting cases).  In fact, courts have found detention even shorter than a year to be unreasonably prolonged as part of a procedural due process analysis.[1]

In *Demore*, the Supreme Court upheld the constitutionality of section 1226(c), relying on the "very limited time of . . . detention at stake" and noting that "in the majority of cases[, section 1226(c) detention] lasts for less than the 90 days . . . considered

---

[1] *See, e.g.*, *Vargas v. Beth*, 378 F. Supp. 3d 716, 727 (E.D. Wis. 2019) ("approximately nine and a half months"); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) ("over seven months" and "over nine months" by the next removal-related hearing); *Hernandez v. Decker*, 2018 WL 3579108, at *1, *12 (S.D.N.Y. July 25, 2018) (nine months); *Sajous v. Decker*, 2018 WL 2357266, at *1, *12 (S.D.N.Y. May 23, 2018) (over eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 720 (D. Md. 2016) (exceeding ten months); *see also Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1218 (11th Cir. 2016) ("[A] criminal [noncitizen's] detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case.").

presumptively valid in *Zadvydas*." *Demore*, 538 U.S. at 529 & n.12; *see id.* ("[I]n 85% of the cases in which [noncitizens] are detained pursuant to [section] 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days.  In the remaining 15% of cases, in which the [noncitizen] appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." (citations omitted)).

Walker's 25-month detention far exceeds the four-month average cited in *Demore*.  The length of Walker's detention therefore supports his argument that his detention without an individualized bond hearing has been unreasonably prolonged.

Second, courts consider the conditions of detention.  Whether "the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention" factors into the reasonableness of Walker's detention.  *Sajous*, 2018 WL 2357266, at *11 (citations omitted).  "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing."  *Muse*, 409 F. Supp. 3d at 717.

The government has submitted the declaration of a BFDF employee regarding the conditions of Walker's detention.  *See* Docket Item 9-2.  In that declaration, the government avers that the facility is unlike a prison because "most persons . . are not locked in a cell," they "do not face the same level of restrictions typical of prison restrictions," and they "ordinarily may move throughout the [f]acility without being required to wear handcuffs or legcuffs."  *Id.* at ¶¶ 9, 11, 16.  "Six of the dorm units are open-dorm style," but two others—for detainees with criminal histories or female detainees—have cell doors that close at night.  *Id.* at ¶ 11.  And "persons held at BFDF

[are] required to wear . . . restraints . . . when being booked in or booked out" or when they are "facing discipline [and are] brought to the Special Housing Unit" ("SHU"). *Id.* at ¶ 16.

Because of the cells, restraints, and discipline in the SHU, conditions at BFDF certainly "resemble penal confinement" for at least some persons detained there. *Muse*, 409 F. Supp. 3d at 717. And while the record contains no facts about the particular conditions of Walker's confinement, he may well have been locked in a cell because, as the government repeatedly highlights, he has a criminal history. *See, e.g.*, Docket Item 9-1 at 2, 8. So the government has not shown that Walker's detention is "meaningfully different from [detention in] a penal institution." *Sajous*, 2018 WL 2357266, at *11. This factor therefore weighs in Walker's favor as well.

Third, courts consider whether the detainee has prolonged his own detention. The Second Circuit has found that this factor weighs against finding detention unreasonable when a noncitizen has "substantially prolonged his stay by abusing the processes provided to him" but not when "an immigrant . . . [has] simply made use of the statutorily permitted appeals process." *Hechavarria v. Sessions*, 891 F.3d 49, 56 n.6 (2d Cir. 2018) (first quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)). As the Sixth Circuit has noted, "appeals and petitions for relief are to be expected as a natural part of the process. A[] [noncitizen] who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him." *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) (cited in *Hechavarria*, 891 F.3d at 56 n.6). Indeed,

> although a[] [noncitizen] may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take. The

8

> mere fact that a[] [noncitizen] has sought relief from deportation does not authorize the [government] to drag its heels indefinitely in making a decision. The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.

*Id*.

Although Walker has caused some of the delay in his removal, he has not "abus[ed] the processes provided to him." *See Hechavarria*, 891 F.3d at 56 n.6 (quoting *Nken*, 556 U.S. at 436). He requested several continuances so that he could retain legal counsel, and he received two brief extensions of filing deadlines. Docket Item 1 at ¶¶ 22-25, 29. Otherwise, he has done nothing more than challenge his removal and appeal the IJ's decision to the BIA and then to the Fourth Circuit. *See id.* at ¶¶ 20-30; *see also* Docket Item 14. The government decisionmakers, in contrast, are collectively responsible for more than 19 months of delay. Therefore, the third factor also weighs in Walker's favor.

Finally, courts consider the likelihood that the removal proceedings will result in a final order of removal. This Court declines to weigh the merits of Walker's claims pending before the Fourth Circuit.

After balancing all these factors, this Court finds that Walker's detention has been unreasonably prolonged. Therefore, this Court turns to the second step of the two-part inquiry to determine what remedy his unreasonably prolonged detention demands.

### B. The Process Due to Walker

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]dentification of the specific dictates

9

of due process generally requires consideration of three distinct factors," *id.* at 335, namely: "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake." *Nelson v. Colorado*, 581 U.S. 128, 135 (2017). Here, that analysis leads to the conclusion that Walker's continued detention without an individualized hearing, at which the government must justify his continued detention by clear and convincing evidence, fails to "comport with the 'fundamental fairness' demanded by the Due Process Clause." *See Schall v. Martin*, 467 U.S. 253, 263 (1984).

Walker's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity." *See Addington v. Texas*, 441 U.S. 418, 427 (1979). He has an obvious interest in his "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint." *See Zadvydas*, 533 U.S. at 690. Moreover, while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," *see Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (emphasis in original), Walker has not conceded his deportability, and the resolution of that issue remains pending before the Fourth Circuit. In fact, his interest in liberty in the United States must indeed be strong for him to subject himself to unreasonably prolonged detention while contesting his deportability. *See Fremont v. Barr*, 2019 WL 1471006, at *6 n.7 (W.D.N.Y. Apr. 3, 2019).

This Court recognizes that the government's interest in detaining Walker also may be strong. The government contends that Walker's risk of flight and disregard for the law justify his continued detention. Docket Item 9-1 at 8. In fact, Walker is detained under 8 U.S.C. § 1226(c), which applies to noncitizens who fall "into one of several

10

enumerated categories involving criminal offenses and terrorist activities." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). "[Noncitizens] detained under [that] authority are not entitled to be released under any circumstances other than those expressly recognized by the statute."[2] *Id*. at 303.

In mandating the detention of criminal noncitizens, the statute reflects a congressional purpose of reducing the risk of flight and danger to the community. See *Demore*, 538 U.S. at 518-19 (explaining that Congress found that "deportable criminal [noncitizens] who remained in the United States often committed more crimes before being removed" and that "20% of deportable criminal [noncitizens] failed to appear for their removal hearings").[3] "The government's interest in preventing crime by arrestees is both legitimate and compelling." *Salerno*, 481 U.S. at 749. And general concerns about the risk of flight highlight the government's compelling interest in preserving its "ability to later carry out its broader responsibilities over immigration matters." *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991).

### C.    The Procedures Used Thus Far

Finally, this Court concludes that in light of the procedures used thus far, there is a significant risk of an erroneous deprivation of Walker's liberty interests. Section 1226(c) prohibits the government from offering a detainee the opportunity to challenge

---

[2] The exception from mandatory detention is a "limited authorization for release for witness-protection purposes," *Jennings*, 583 U.S. at 304, not applicable here.

[3] The Court noted that this number included noncitizens who were released from custody *without* an individualized bond hearing. *Demore*, 538 U.S. at 519 n.4 ("Although the Attorney General had authority to release these [noncitizens] on bond, it is not clear that *all* of the [noncitizens] released were in fact given individualized bond hearings." (emphasis in original)).

whether he is, in fact, a danger or a flight risk.  *Jennings*, 583 U.S. at 303.  Now that Walker's detention has become unreasonably prolonged, due process requires *some* opportunity to be heard "at a meaningful time and in a meaningful manner," *Armstrong*, 380 U.S. at 552, to challenge the statute as applied to him.

An opportunity to be heard in a meaningful manner necessarily requires a hearing that "satisfies the constitutional minimum of fundamental fairness." *Santosky v. Kramer*, 455 U.S. 745, 756 n.8 (1982) (citation and internal quotation marks omitted). When the government seeks the civil detention of a person to effect a compelling regulatory purpose, it must show by clear and convincing evidence that such detention is necessary to serve that compelling interest.  *See Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *Addington*, 441 U.S. at 432-33; *see also Santosky*, 455 U.S. at 756 (explaining that the "clear and convincing evidence" standard applies "when the individual interests at stake in a . . . proceeding are both 'particularly important' and 'more substantial than mere loss of money'" (quoting *Addington*, 441 U.S. at 424)). That standard applies equally here.

To sustain the prolonged detention of a noncitizen subject to removal proceedings based on its general interests in immigration detention, the "[g]overnment [is] required, in a 'full-blown adversary hearing,' to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person," *Foucha*, 504 U.S. at 81 (quoting *Salerno*, 481 U.S. at 751), or ensure that the noncitizen will appear for any future proceeding.[4]  This

---

[4] As this Court explained in *Hemans*, 2019 WL 955353, at *8 n.7, a pretrial detainee's right to a speedy trial distinguishes the interests supporting the evidentiary

also requires consideration of less restrictive alternatives to detention.  *See id*.; *cf. United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less restrictive alternative is offered to a" regulation burdening a constitutional right, "it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals.").

### D. Conclusion

Walker's detention has been unreasonably prolonged.  Because section 1226(c) does not require—indeed, does not permit—an individualized hearing in which the government must demonstrate by clear and convincing evidence that no conditions of release can reasonably serve the government's compelling regulatory interests in detaining him, and because Walker has not in fact received such a hearing, section 1226(c) is unconstitutional as applied to him.  As such, his continued detention violates the Due Process Clause.

Walker must be released unless, no later than **14 calendar days from the date of this decision and order**, the government demonstrates by clear and convincing evidence before a neutral decisionmaker that Walker's continued detention is necessary to serve a compelling regulatory purpose—such as preventing flight or protecting others or the community.  The decisionmaker also must consider—and must address in any decision—whether there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention, including release on bond in an amount the

---

standard traditionally applicable to flight-risk determinations for pretrial detention purposes from what is required after an unreasonably prolonged immigration detention.

13

petitioner can reasonably afford, with or without conditions, that also would reasonably address those same regulatory purposes.

## II.     LIMIT ON TRANSFERRING WALKER

Walker also has asked this Court to "[e]njoin [the government] from transferring [him] outside the jurisdiction of" this Court "pending the resolution of this case." Docket Item 1 at 32.

Now that this Court has conditionally granted Walker's writ, his jurisdictional concerns are not unreasonable. After all, "conditional writs 'would be meaningless' if a habeas court could not determine compliance with them and order sanctions accordingly." *Mason v. Mitchell*, 729 F.3d 545, 549 (6th Cir. 2013) (quoting *Satterlee v. Wolfenbarger*, 453 F.3d 362, 368 n.5 (6th Cir. 2006)). But "[i]t is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985). In other words, regardless of where Walker is housed, this Court retains jurisdiction over his habeas petition. So there is no need to interfere with DHS's authority to "arrange for appropriate places of detention" under 8 U.S.C. § 1231(g)(1), and Walker's motion to prevent his transfer is denied.

## **ORDER**

In light of the above, IT IS HEREBY

ORDERED that Walker's motion for an order preventing his transfer is DENIED; and it is further

ORDERED that **within 14 calendar days of the date of this decision and order**, the government must release Walker from detention unless a neutral decisionmaker conducts an individualized hearing to determine whether his continued detention is justified; and it is further

ORDERED that at any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Walker's continued detention is necessary to serve a compelling regulatory purpose, such as minimizing risk of flight or danger to the community.  Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less-restrictive alternative to detention would also address the government's interests.  In other words, the decisionmaker must find that no condition or combination of conditions of release can reasonably ensure Walker's appearance and the safety of the community—that is, even with conditions, Walker presents an identified and articulable risk of flight or a threat to an individual or the community; and it is further

ORDERED that **within 30 days of the date of this decision and order** the government shall file an affidavit certifying compliance with this order.  That affidavit should include a copy of the bond hearing order.

SO ORDERED.

Dated:     April 23, 2024
           Buffalo, New York

                                        */s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE